**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MARK ENGLISH,**

           **Plaintiff,**

**-vs-**                                                  **Case No. 6:09-cv-1914-Orl-31GJK**

**J.R. PARKER and RYAN ENGLISH,**

           **Defendants.**

_____

# ORDER

This matter comes before the Court without oral argument on the opposing motions for summary judgments filed by the Defendants (Doc. 37) and by the Plaintiff (Doc. 47). In resolving these motions, the Court has also considered the responses and replies filed by the parties.

**I.**      **Background**

Defendant J.R. Parker ("Parker") is the Sheriff of Brevard County. He has been sued in his official capacity. Defendant Ryan English is a Brevard County Deputy Sheriff. The Plaintiff, Mark English, is Ryan's maternal uncle. On nineteen different days from 2005 to 2008, Ryan English used his Sheriff's Department-issued laptop to access information about Mark English on the Driver and Vehicle Identification Database (henceforth, "DAVID"), which is maintained by the Florida Division of Highway Safety and Motor Vehicles.[1] According to Ryan English, the DAVID system provides "addresses and registered vehicle information," as well as other personal

---

[1] It appears from the record that Ryan English sometimes accessed the information more than once in a day, resulting in a total of 32 instances of access on those 19 days. (Doc. 43-1 at 17, 30).

information, such as driver's license numbers, social security numbers, and dates of birth.  (Doc. 37-5 at 3).  Ryan English testified that when he accessed the DAVID system in reference to his uncle, he reviewed the address and registered vehicle information but did not review any of the other information available.  (Doc. 37-5 at 3).  He says he may have disclosed some of the vehicle registration information he obtained from these DAVID searches, but contends that he did not otherwise disclose or use any of the information. Mark English does not point to any evidence in the record or otherwise dispute these assertions.

Ryan English has admitted that he did not access this information as part of an authorized investigation.  Rather, he testified that he was attempting to keep tabs on Mark English's domestic partner, George Pyke ("Pyke").  Pyke was arrested in June 2006 on a charge of sexual battery on a person under the age of 12, in violation of Florida Statute § 794.011(2)(a).  (Doc. 37-1 at 1).  Although the name of the victim has been redacted in the documents that are part of the record in this case, Ryan English asserts that he was the victim, and Mark English does not dispute this. Ryan English testified that he was accessing the information on DAVID "to assure myself that Mark English and George Pyke did not relocate to an area closer to me."  (Doc. 37-5 at 3).

Shortly after Pyke's arrest, the judge in his criminal case entered an order barring him from having unsupervised contact with any minors.  (Doc. 37-2 at 1).  In May 2007, Pyke pleaded guilty to one count of committing a lewd and lascivious act upon a minor, in violation of Florida Statute § 800.04.  (Doc. 37-3 at 4).  He was sentenced to ten years of probation, and prohibited from having any contact with his victim.  (Doc. 37-3 at 1).

On November 9, 2009, Mark English filed this suit against his nephew and the Sheriff's Office.  He contends that the accessing of his information on the DAVID system violated the

-2-

Driver's Privacy Protection Act (the "DPPA" or the "Act"), 18 U.S.C. §§ 2721 *et seq.* Ryan English contends that, even though the Sheriff did not authorize it, his review of his uncle's information was not a violation of the Act.

**II.    Summary Judgment**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the

non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

### III.   Analysis

The DPPA makes it unlawful for any person "knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under [18 U.S.C. § 2721(b)]." 18 U.S.C. § 2722(a).  The Act defines "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information," but excludes from that definition "information on vehicular accidents, driving violations, and driver's status."  18 U.S.C. § 2725(3).  The list of permissible uses set forth in 18 U.S.C. 2721(b) includes only one that is at issue in this case: 18 U.S.C. § 2721(b)(4), commonly referred to as the "litigation clause," which permits disclosure of personal information "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court."

Congress enacted the DPPA to "limit the release of an individual's personal information contained in his driver's license record to those who had a legitimate and lawful need for the information." *Kehoe v. Fidelity Federal Bank & Trust*, 421 F.3d 1209, 1210 (11th Cir. 2005). Section 2724 of the DPPA establishes an individual cause of action for a violation of the DPPA, and provides that the court may award (1) actual damages, but not less than liquidated damages of $2,500; (2) punitive damages; (3) attorneys' fees and costs; and (4) such other relief as the court

determines to be appropriate. A plaintiff need not prove that it suffered actual damages to be entitled to an award of liquidated damages. *Kehoe*, 421 F.3d at 1213.

### A. Permissible Use

It is undisputed that Ryan English knowingly obtained Mark English's personal information from a motor vehicle record. *See* 18 U.S.C. § 2722(a). Thus the only element to be established is whether the information was obtained for a use not permitted under 18 U.S.C. § 2721(b). *See id.*

Ryan English contends that he accessed Mark English's information on the DAVID system between 2006 and 2008[2] in connection with various litigation involving Pyke,[3] and that his obtaining of the information was therefore permitted under the litigation clause of Section 2721(4). Specifically, Ryan English contends that he accessed his uncle's DAVID information to determine whether Pyke was complying with the no-contact order against him, which has been in effect (in different forms) since June 2006. According to Ryan English, he wanted to see if Pyke was relocating to an address nearer to him, and because his uncle and Pyke were "virtually inseparable," he believed he could determine whether Pyke had relocated by keeping track of whether his uncle had relocated.

---

[2] Ryan English also accessed his uncle's DAVID information three times in 2005. He does not contend that the litigation exception applies in regard to these incidents; however, he does contend that the statute of limitations has run as to any disclosures occurring in 2005. Mark English contends that the statute of limitations did not begin to run until 2009, when he first learned that his information had been accessed. This issue is addressed below.

[3] In addition to the criminal proceedings that concluded in May 2007, Pyke was sued civilly (along with Mark English and Dorothy English – Mark's mother – by Ryan English and other members of his family in 2006. (Doc. 37-4). The civil proceedings concluded in July 2007.

Within this Circuit, the burden of proof lies with the plaintiff to show that the defendant obtained his personal information "for a purpose not permitted" under the Act. *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.*, 525 F.3d 1107, 1112 (11th Cir. 2008). The Eleventh Circuit Court of Appeals has applied a broad construction to the litigation clause. For example, in the *Thomas* case, an attorney had purchased the registration information for all individuals in Miami-Dade County who registered motor vehicles between January 1, 2000 and November 15, 2002. *Id.* at 1109. This list of 284,000 individuals' information included that of the plaintiff, who had registered a vehicle in June 2002. *Id.* The attorney was trying to obtain evidence that certain automobile dealers (whom he had already sued) had engaged in a custom and practice of deceptive conduct.[4] *Id.* at 1114.

The plaintiff in *Thomas* complained, among other things, that the attorney had not even attempted to contact the vast majority of the people whose personal information he had obtained and therefore (at least as to the uncontacted people) his actions did not fall within the litigation clause. *Id.* The trial court disagreed and granted summary judgment in favor of the attorney, finding that the attorney had obtained all of the information in anticipation of litigation. *Id.* The Eleventh Circuit affirmed that decision and went on to state, in *dicta*, that even if the information had been obtained so as to create a database of potential witnesses for an as-yet-unfiled FDUTPA case, that would have been permitted under the litigation clause. *Id.* at 1115 n.5.

---

[4]Based on case law then in effect (but subsequently overturned), the attorney believed he needed to plead and prove multiple acts of deceptive and unfair trade practices on the part of a dealership to state a claim against that dealership for a violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-.213.

Even given this broad construction, however, the Court concludes that Ryan English's actions were not permitted under the litigation clause. By accessing the DAVID system, Ryan English obtained information about his uncle's home address and, by extension, that of Pyke. But that address was not an issue in any of the litigation – actual or potential – involving Pyke and Ryan English. Pyke was forbidden from contacting Ryan English, not from moving to a new home. Discovering that Pyke had moved would not have given Ryan English grounds to bring a civil suit, or for him to seek to have Pyke punished for violating the no-contact order, or anything of that nature. As such, the information was not obtained for use in a court proceeding, or as part of an investigation in anticipation of litigation, or otherwise in conformity with the litigation clause.

Moreover, the record is devoid of any suggestion that Ryan English suspected Pyke of having relocated (or of having contacted him in violation of the no-contact order, for that matter). The fact that personal information could conceivably be useful in some litigation at some point in time is not enough, on its own, to bring its acquisition within the DPPA's litigation clause. A more tangible connection to existing or anticipated litigation is required. *See, e.g.*, Thomas, 525 F.3d at 1115 n.5 (stating in *dicta* that acquisition of personal information that would be used to contact potential witnesses for FDUTPA cases attorney hoped to file would fall within litigation clause). *See also Pichler v. UNITE*, 542 F.3d 380 (3d Cir. 2008) (stating that labor union's acquisition of employees' personal information for purpose of contacting them at home to unionize violated DPPA, even though labor union hoped that contacted employees would provide evidence of workplace violations so union could bring suit against employer). In the absence of at least a belief that the inquiry will uncover personal information that would have some relevance to

existing or expected litigation, the obtaining of that information falls outside the litigation clause. Accordingly, Mark English has shown that his personal information was obtained for a purpose not permitted under the DPPA, and he is entitled to summary judgment as to liability.

### B.     Damages

Mark English has stipulated that he is only seeking liquidated damages, rather than actual damages.  *See* 18 U.S.C. § 2724(b)(1).  He contends that  Ryan English used the DAVID system on 19 different dates to access his personal information, making a total of 32 queries of his personal information on those dates.  He contends that each of the 32 queries constitutes a separate violation of the DPPA.  He therefore seeks to recover $80,000 in liquidated damages – *i.e.*, $2,500 in liquidated damages for each such violation.

The Court cannot resolve this issue on this record.  For one thing, Ryan English disputes that each of the 32 queries should constitute a separate violation.  (Doc. 52 at 5).  Not all of the information contained in the DAVID system qualifies as "personal information" under the DPPA.  Ryan English says he was trying to find out, among other things, what vehicles were registered in his uncle's name, based on his belief that Pyke would have access to those vehicles.  The fact that an individual has a particular vehicle registered in his name is not, by itself, "personal information" under the DPPA.  *See* 18 U.S.C. § 2725(3) (defining personal information as " information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information.").  Thus, if one of the queries revealed only registration information, it would not constitute a separate violation.  In addition, Ryan English argues that he was viewing the same information repeatedly during the various queries, and that

some of the same-day queries may have been caused by a loss of wireless signal, which would have forced him to re-access the DAVID system. He contends that it would be improper to consider each query a separate violation under these circumstances. As genuine issues of material fact remain on this point, the Court will not grant summary judgment as to damages.

### C. Statute of Limitations

Ryan English accessed his uncle's DAVID information three times in 2005. He contends that the four-year federal statute of limitations has run as to any alleged violation occurring in 2005. Mark English contends that the statute of limitations did not begin to run until 2009, when he first learned that his information had been accessed. As the Court cannot tell what information was accessed in 2005, and when Mark English was or should have become aware that his records were being accessed, summary judgment is inappropriate on this point.

### D. Respondeat Superior

Mark English contends that the Sheriff's Office is responsible for the DPPA violations of Ryan English under the doctrine of *respondeat superior*. (Doc. 47 at 10-11). However, he does not set forth the standard for imposing liability on the basis of *respondeat superior*, much less argue that the conduct of the Sheriff's Office satisfies that standard. The Court cannot grant summary judgment as to *respondeat superior* liability on such a record.

### E. Punitive Damages

To recover punitive damages under the DPPA, the plaintiff must show that the defendant acted with "willful or reckless disregard of the law." The record is devoid of any evidence that Ryan English knew of the existence of the DPPA, much less willfully or recklessly disregarded it. *See Pichler*, 542 F.3d at 397 (plaintiff must show that defendant "appreciated it was engaging in

wrongful conduct" under the DPPA to recover punitive damages). Mark English argues that Ryan English willfully and recklessly disregarded his oath as a Deputy Sheriff, and that he violated Florida's anti-stalking law by using the DAVID system to keep tabs on his uncle. Even if true, however, neither would entitle Mark English to recover punitive damages. The Defendants are entitled to summary judgment on this point.

## IV.    Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 36) filed by Mark English is **GRANTED IN PART and DENIED IN PART**, as set forth above. And it is further

**ORDERED** that the Motion for Summary Judgment (Doc. 47) filed by the Defendants is **GRANTED IN PART and DENIED IN PART**, as set forth above.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 16, 2011.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party